■ In the Matter of SISTERS OF CHARITY HOSPITAL OF BUFFALO, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents.—Casey, J. P. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Health which denied petitioner's application to establish a catheterization laboratory.

Petitioner, a not-for-profit acute care and nursing facility with a 516-bed capacity serving principally the City of Buffalo, submitted an application to respondent Department of Health pursuant to Public Health Law § 2802 seeking approval for the construction of an adult cardiac catheterization laboratory. At about the same time, Millard Fillmore Hospital filed an application for permission to construct a similar unit. There are currently eight such laboratories in petitioner's area. The Department reviewed petitioner's application under a certificate of need program to determine the public need for the proposal, the applicant's competence and the financial feasibility of the proposed services in accordance with Public Health Law § 2802, and referred the application to the State Bureau of Facility & Review of the Office of Health Systems Management and the regional Health System Agency, both of which recommended disapproval for lack of a showing of need. Following such review, petitioner was notified that its application was disapproved. However, Millard Fillmore Hospital's application was approved.

Petitioner requested and received a hearing pursuant to Public Health Law § 2802 (5) which was limited to the issue of need. Although the Administrative Law Judge found a public need for the proposed facility under the criteria of 10 NYCRR part 709 and recommended approval of petitioner's application, respondent Commissioner of Health (hereinafter respondent) rejected 96 of the 125 findings of fact of the Administrative Law Judge, made new findings of fact and rejected the recommended approval, chiefly on the basis that adequate capacity to perform cardiac catheterization procedures already existed in the community.

Petitioner challenges respondent's determination in this CPLR article 78 proceeding that has been transferred to this

court. Petitioner's primary argument is that respondent's determination is based solely on the Department's population-based mathematical formula, which indicates that because the region involved is experiencing a population decline, the number of cardiac catheterizations will similarly decline, and that reliance on this basis is arbitrary and impermissible *(see, Matter of Fairfield Nursing Home v Whalen,* 64 AD2d 802). Contrary to this claim by petitioner, respondent did not rest his conclusion solely on the declining population rate in the Buffalo area, but considered a wide variety of factors. Respondent credited the testimony of two physicians that not only the declining population in the area, but the increased availability of clot dissolving drugs and new surgical techniques, would reduce the number of future catheterizations, thus diminishing the need for additional laboratories. It was further the opinion of these two board-certified cardiologists that the medical community was "rethinking" the advisability of angioplasty and other invasive techniques and that there would be a "reining in" of these procedures. It was not irrational for respondent to accept the testimony of these experts over the testimony of petitioner's expert, an epidemiologist and biostatistician, who was neither a cardiologist nor a medical doctor.

Furthermore, the record supports respondent's finding that the catheterization use rate in petitioner's region is excessive as compared to the State rate. For example, in 1986 the State average for catheterizations performed that resulted in "normal" findings was 17.7%. Normal findings for Buffalo General Hospital, Millard Fillmore Hospital and Erie County Medical Center were 29.2%, 25.7% and 36.1%, respectively. As to future demand, respondent's determination that the capacity of the eight existing laboratories is "10,000 plus" is supported by the record, and respondent's conclusion that the capacity is more than adequate to accommodate the 7,690 procedures that presently occur annually and any increasing use is likewise supported by substantial evidence. The other contentions of petitioner have been considered and are not, in our opinion, of such consequence as to require the determination to be considered arbitrary. Respondent considered a multitude of factors and his determination is supported by substantial evidence. This conclusion ends further judicial inquiry and requires that the determination of respondent be confirmed.

Yesawich Jr., Mercure, Crew III and Harvey, JJ., concur. Adjudged that the determination is confirmed, and petition dismissed, without costs.